Janet H. Foisie v. Worcester Polytechnic Institute Appeal Number 19-2090 Campbell Barrett, District Court Committed Error Janet H. Foisie v. Worcester Polytechnic Institute Appeal Number 19-2090 She clearly falls within the textual definition of a creditor. To avoid that, the district court instead said, no, this issue has been conclusively determined as a matter of Massachusetts law by the Mass Appeals Court decision in Welford, and I find Massachusetts law applies to this. I think you should tell us why you think the Appeals Court decision, which is not an SJC decision in Welford, does not in fact so limit the text of the Uniform Fraudulent Transfer Act. To properly answer that, I think it's important to look at both Welford as well as the Yacobian case that Welford relies upon. These are both cases where a spouse in one instance and an ex-spouse in the other sought to invalidate a transfer that they claimed impacted their rights in the divorce decree. The Massachusetts court in both instances said that the mere fact that these parties were married and the marriage itself does not create rights that would preclude the types of transfers that were involved in those two cases. We had a divorce decree that was negotiated back in 2010 and 2011. During that negotiation, a sizable amount of assets, $14 million, were not disclosed. That generates and creates a claim at that point by Janet Fossey on the basis of fraud. Fraudulent nondisclosure is the standard in Connecticut, and when Mr. Fossey filed this financial affidavit and was canvassed by the court, he had an affirmative obligation to disclose his assets, which he did. In 2015, Mrs. Fossey filed a motion to open the judgment based on fraud. That created a claim that clearly falls under the UFTA's broad definition. If you look at Welford, there was a situation where there was this after-acquired lottery winning that may or may not have been transferred between Mr. Welford and his new spouse, but the wife at that point had no claim other than the fact that she had been married, that she might have an alimony award that could be altered, she might have child support awards that could be altered. It was an entirely new asset, and the bottom end of the decision was that that alone didn't give her the right to challenge any transfer if one indeed existed. Similarly, in Yugovian, it was a situation at the time of the divorce, and the wife quarreled with the fact that the husband had transferred some real property to his children from prior marriage a couple of years or five or six years earlier, and the court there said, look, he's free to distribute his assets while the marriage is in a healthy state, and you really need to have some kind of an imminent claim of divorce in that circumstance. That's what those cases said. They're very different from Fossey, where there was an obligation to disclose that when breached. It created a claim... Counsel, okay, you're getting off the question I asked. I'm going to now defer to Judge Selya. Thank you, Judge Lynch. Counsel, let's talk a little bit about choice of law. The district court, of course, determined that question contrary to the way you wish and said that Massachusetts law controlled. I understand your argument that Connecticut law controlled. My question to you is whether we have a sufficient factual record that we can make an intelligent determination as to which law ought to control. And second, whether there's any need for such a determination, because if you are correct that Welford is inapplicable, is there any material conflict between Massachusetts and Connecticut laws on these points? Why don't you take the second of those questions first? Is that where there's a conflict on the points?  And in the appellee's brief, they cite the existence of the statute that they claim limits their exposure of liability given their not-for-profit organization. That is one example of a difference in Connecticut law and Mass law. I think critically as well, in Connecticut law, there is no preemption of common law claims under fraudulent conveyance. So we did plead this in four counts, two of which were common law, and the common law in Connecticut is distinct from the law on fraudulence transfer in Massachusetts. For example, if the court looks at the Gaudio case, cited in the appellee's brief at page 36, the Connecticut appellate court case, in the Gaudio case, the appellate court in Connecticut recognizes that the standard for the marital estate, fraudulently, is different than the classic parameters of a fraudulent conveyance action. And indeed, in a case where money is removed from marital estate, which we claim happened here, one does not have to prove in a constructive conveyance action that there is an insolvency that's been created and that the transfer hasn't been done for adequate consideration. The mere fact that the money was removed from the estate warrants that it be returned without those expressed findings. So there are differences and different nuances. Let me, let's take that, let's take that, I've got your answer on that. Now, now let's talk about my earlier question to you. Alright? Do we have enough facts in the record to make a determination as to which law ought to apply? Yes. Let me, let me, let me give you some example. Is there anything in the record about what communications took place between Robert Foisy and WPI leading up to and facilitating the No. Okay. Do we, do we know, for example, where Robert Foisy was physically located at the time he made each of the disputed gifts? No. Do we, do we know, for example, where the transferred property itself was located? We, we know that it was located in Switzerland. That's, that's true of a portion of it. That's the reduced trust. Correct. Alright? But the rest of it, which was cash, including the, including the funds collected on the promissory notes that the husband had foresworn, alright? We don't know where that money was sent from. At least on, on this record, according to anything I've been able to find. That's correct, Your Honor. Okay. And, and of course, the, the, do we know if the transfers were in cash or in securities? Do we know anything about the medium of exchange? I believe that there are some were in securities and we know that there were some transfers in real property in Florida. Okay. But, but, but, but I'm, I'm having, I'm having trouble trying, because to me, answers to all those questions are going to shed some light on whether Massachusetts law or Connecticut law, alright, is the appropriate choice of law under the, the most significant state approach that, that Massachusetts as the forum state would, would take for these questions. So I'm, I'm, I'm simply, I, I know you'd like to, you'd like a decision from this court at this stage saying that Connecticut law applies. Your opponent would like a decision saying that Massachusetts law applies. Alright? I'm, I'm at the risk of making both of you unhappy. What, what I'm suggesting is that prudence, prudence and fundamental fairness may very well suggest, alright, that the question of what law applies ought to be left until we have discovery and a fully developed record, which insofar as I can find, we don't have at the time. What's your reaction to that? My reaction is that I respectfully look at the issue of the choice of law with a different focus and not simply on the mechanics of the transfer. So the entire sequence of events which begins with the fraudulent misrepresentations of Mr. Foise back in 2010 and 2011. Yeah, but the trouble with, the trouble with that perspective from, from my point of view is it's, is it's clear that the, that the misconduct, alleged misconduct of Mr. Foise and, and his, and his alleged double dealing with his, with his now former wife, it's clear that all of that was centered in Connecticut, but Mr. Foise, neither Mr. Foise nor his estate are the defendant in this action. WPI is the defendant and so it seems to me that the Connecticut centric nature of the relationship between the, between the now, between the divorced spouses, all right, cannot be determinative of what the choice of law should be in a case where WPI is the sole defendant. And we've got to consider what WPI's involvement is, what, what, what its exposure, if any, to Connecticut was, et cetera, in making this suit. The way it's set up on this point indicates that you pretty much want us to treat this as if it were a suit between Mrs. Foise and, and Robert Foise's estate. And I'm suggesting to you that, that we can't do that. It's at least triangulated and that therefore that complicates the choice of law question. And my response, Your Honor, if you'd like one, is that, and we cite this in our brief, is that a fraudulent transfer action really bears the hallmarks of an equitable remedy against the misconduct of Mr. Foise and that it should be regarded as an action to recover a debt against the debtor and that WPI bears the hallmarks of Mr. Foise under that. And I think the point that we make in our brief... of this alleged, of these allegedly fraudulent transfers should be treated for purposes of a choice of law determination in this case as if it were Mr. Foise. It should stand in his shoes for that purpose? Yes, Your Honor. And, and have you cited us any case that so that, Your Honor, on page 22 of our brief, when we cite the Blumenthal... That's not what I asked you. I didn't ask you if you discussed it. I asked you if you have cited to us any case holding that the third party, that for purposes of this kind of choice of law determination, the third party beneficiary of a fraud, of an allegedly fraudulent transfer stands in the shoes of the transferor. Well, we, we've cited both the Blumenthal case and the Picard case, which both stand for the proposition that the third party action to recover fraudulent transfer property is regarded to recover a claim against the debtor. So I think that that... That's true, but that's not, that's not the same thing. Because on the most significant context analysis, all right, if, if, if we simply take your, your view of it, we would, we would turn a blind eye to the fact that a Massachusetts court would plainly, on a most significant context analysis, give some weight to factors such as where is the, where is the transferee located, which in this case is Massachusetts, and where is the transferred property located, which the record indicates that some portion of it is located in Massachusetts and the record is indecipherable, at least to me, as to the remainder. And, and, and I don't see how that fits in with application of the, either the restatement or the Massachusetts conflict of law cases. And, and my response, Your Honor, is that one of the factors that we set forth in our brief are the policy considerations in the particular field of law. And that is an articulated basis. And we make the argument in our brief that if the, if WTI is correct in their interpretation, and in fact, the, the ability to recover in Massachusetts based on the Welford case is narrower than it is in Connecticut, that creates a scenario in this particular field of law that allows alleged... But wait, with, with all due respect, you can't have it both ways, counsel. You've, you, you've argued, argued to us that Welford is distinguishable and should have no application here. So you can't now turn around and, and, and say, however, Welford's a good reason for determining that, that Connecticut law should apply. Assuming our, well, I think I should have prefaced that by saying... You want to make it as an arguendo argument, but for purposes of our discussion, Welford is so factually distinguishable from this case that, that I suggest you argue on the Welford to be inapposite, or that we may hold Welford to be inapposite. And, and then I will turn your, I will pivot, Your Honor, to the answers that I gave a few minutes ago about the distinguishing factors between Connecticut substantive law and Massachusetts substantive law, both on the existence of the statute that WTI claims controls here on their liability as well as on the nuances of Connecticut common law that create a different scenario depending on where this case is litigated. And I would suggest that the Gladio case in particular would give Janet Foisy a, a easier route to success on the fraud and conveyance than just a straight UFTA statutory standards that are, are adopted by Massachusetts. And, and that difference creates a scenario where tortfeasors like Bob Foisy essentially can forum shop where they send their assets to avoid collection by picking a state that has a more narrow ability for recovery. And given all of the fatality of the circumstances and given that reality, which I think fits readily within one of the criteria under Massachusetts forum determination law, it, it does strongly suggest that Connecticut substantive law, based on the record that we have, should control. Thank you. That's helpful. I have no further questions. Judge Barron. On the choice of law issue, do we know where the both parties to the marriage were at the time of the Connecticut judgment? They were both, they were both living in the state of Connecticut at the time. And so I take your point of view is that when the, when there's a state court judgment that gives rise to the debt, it's fair to treat the fraud and conveyance law of that state sort of in service of its laws that would allow the debt to arise. And so it makes no sense to then have some other states frauds and conveyance law apply because that could just undermine the state's policy in giving rise to the debt in the first place. Yes, I agree with that, Your Honor. I think that readily falls under the factor of protection of justified expectations as to what form law should apply. That analysis may have particular force when the transfer is of cash. But when there's a transfer of real property, my understanding of choice of law principles is that the location of where the real property is is often given a fair amount of weight in a choice of law analysis. So while the general point might hold true about how to think about a fraud that's conveyance law, when the conveyance is of some real property, wouldn't we be concerned about disregarding the interest of the state where the real property is located altogether? I agree with you, Your Honor, and that's why it's referenced in the appellee's brief and in our reply brief. That's why there is a separate Florida action initiated by Ms. Foise against a different third party asking for Florida law to apply. And so in this action, the recovery under the fraudulent conveyance claim and the common law claim seeks nothing but things other than real property? In this action, the real concern is the values trust, which is about $4.5 million, which is not real property. Is any real property being sought in any of the claims before us? Not that we've pled at this point. Not that we're aware of. So is that no? I think that's a no. Do you know if it's a no? No, we don't know what. We don't know exact. We only know the certain. We know that there's trust. We know that there was a transfer of real property down in Florida, which is being litigated in Florida. But we don't know what other assets Mr. Foise might have transferred to WPI after 2011. Well, does the prospect that it may include – I mean, just to go to the set of questions Judge Selye was asking you before about whether the state of the record is fair enough. If I understand your choice of law position now, it's somewhat contingent as a general matter on whether real property is being sought. So do we have enough knowledge of the facts here to be confident in deciding this case that when we decide the choice of law issue, we're deciding it with the knowledge that no real property is involved? Well, I may be hedging on my prior answer, Honor. But I do think there's a lot of merit in what your Honor was stating before, that we're dealing with a judgment of the Connecticut court. We're dealing with a defined class of assets that constitute the marital estate that is divided by that Connecticut judgment. And Connecticut certainly has the authority to divide assets regardless of where they're located, including real property. So I think a very strong argument is given that whatever property is, whether it's real property cited elsewhere or not, it all – Putting that broader claim aside, if we went back to your first answer where you were suggesting that maybe it does matter if real property is involved, just to repeat my question, following up on Judge Selye, is the factual record developed enough for us to be confident that we could decide this case knowing that we were deciding the choice of law issue on the understanding that no real property was being sought? That's just a yes or no. I think the record is adequate on the choice of law question. On the question of whether we need to decide the choice of law issue, you made reference to the cap question on the damages. Is that something that needs to be decided at this stage of the litigation or is it somewhat premature because we don't know that there's any liability at all on the fraudulent conveyance claim? What's the need for that to be resolved now? I understand the point about the common law claims and that may go to the question of how well-developed the complaint is, but if we set that aside, the only ground for concluding that there's a conflict that needs to be resolved had to do with the statutory cap, which I'm assuming you're saying Connecticut itself doesn't have that cap. Correct. If the only ground is the cap, what's the need for us to resolve that issue at this stage of the litigation? It hasn't been properly framed up whether that cap even applies, so that may be premature. I simply was answering it in the question as to the distinctions between Connecticut and Massachusetts law. The last point, this circles back to the choice of law issue, which may just go to the complexity of the choice of law analysis when you're dealing with a fraudulent conveyance. But in our earlier call, you acknowledged that at least there's some force to the idea that even though Connecticut would have a very strong interest in having its fraudulent conveyance law apply to protect its state court judgment giving rise to the debt, there might be a state interest in giving credit to the interest of the state where real property was transferred. I just wonder if the cap here shows another reason to be wary of taking too hard a line about saying that the only state interest would be the interest of the state that created the judgment that gave rise to the debt, in the sense that when a transferee is a charitable institution or a nonprofit like the University of Massachusetts seems to have a very strong concern about capping that. Does that reflect the fact perhaps that we should take more account of the interest of the state where the transferee is located given the unique attributes the transferee might have and how that could affect that state's interest given all the people that depend on that transferee for education, for jobs, etc.? I don't know. I don't think so. I think that turns a blind eye to the fact that this was at least pled fraudulently transferred assets. Why would we give some weight to the state interest where real property is located? It seems like the logic of doing so has something to do with how important real property is to a state, a state being able to have some sense of its law determining what happens to real property within it. I just wonder whether the cap here isn't reflective of another possibility, which is doesn't the state of Massachusetts have a real interest in what happens to money that one of its charitable institutions has taken in given the vital role institutions like that play within the state? The two scenarios are distinct in my view, Your Honor, and to simply allow money to come into Massachusetts and be protected that has been fraudulently not disclosed as in the case here or many other different types of scenarios, it creates a slippery slope where you are really limiting, you're creating a haven for illegally or fraudulently transferred or obtained assets. I think that's certainly not the intention of the Commonwealth of Massachusetts. It really can't be. Okay. Thank you. It is now time for us to hear from Attorney Chunious for the defendant, Worcester Polytech. Good afternoon, Your Honor. May it please the court, this is Jennifer Chunious on behalf of Worcester Polytech Institute or WPI. At its core, the case, of course, relates to donations that were made to a charitable organization, an educational institution that's a completely innocent bystander here. And while fraudulent conveyance law provides a mechanism for extending personal disputes to an innocent bystander under certain circumstances, that has limits. And in the plain language of the statute, it's limited to an individual or an entity that has a right to payment. In order to establish creditor status, the plaintiff has to establish that she has a right to payment. And here, at most, she's identified a theory of recovery. We don't dispute that under certain circumstances, a plaintiff might qualify as a creditor with a claim within the meaning of the fraudulent conveyance statute, even without a final judgment. But we're talking about a final judgment. Under the facts here, one of the few cases, and it's different than other cases, we already have a final judgment in 2011. And there's no dispute that the plaintiff received the $20 million she was owed as a result of that final judgment. So logically, she can't have a right to payment when we have an established, satisfied prior judgment on the books that has never been disrupted. You know, in 2015, she sought to reopen that divorce judgment. In 2017, she initiated a tort case as a mechanism to modify this judgment. But to date, she's never established a right to payment that would entitle her to modify that final judgment. I mean, put another way, a fraudulent conveyance case is essentially an enforcement action. It's not an action to establish the transferees, your WPI, independent liability. It's just an equitable remedy for the transfer's misconduct. But here, if plaintiff's fraudulent conveyance case were allowed to move forward before she's How would we even proceed, given that her entire case is based on something that hasn't happened yet? You know, if a judgment, for instance, were to enter here under a fraudulent conveyance theory, what amount would be owed? What finding of fraud are we enforcing here in this court? So at a minimum, this could result in inconsistent results and foreign shopping, all to the detriment of WPI and, in essence, third-party bystander. And that's certainly not what the fraudulent conveyance statutes were intended to be, the misdeed that they were intended to remedy. Counsel, that's time. Counsel, it strikes me that many of your arguments go to the merits of the case, as opposed to the question before us, which is whether it was appropriate to dismiss this case on the pleadings before discovery, before the establishment of a great number of facts. Having said that, I'm sure Judge Selye will cover the questions I otherwise would ask. So I turn to him. Well, that places a heavy burden on me, Counsel. I'll try to do my best for Judge Lynch. First, Counsel, the district court totally ignored the statutory definition contained in the UFTA of creditor. And it seems to me that a plain reading of that definition, which sweeps about as broadly as imaginable and which includes contingent claimants, people who hold unliquidated claims, etc., that within that broad text, this plaintiff certainly fits. You have not cited in your brief any case law that narrows what appears to be the plain text of the UFTA, which contains identical language in the Massachusetts and Connecticut iterations. So the choice of law determination doesn't affect this. Can you give me any help on that? Why we shouldn't apply that definition exactly the way the drafters wrote it? Yes, Your Honor. We would like you to apply that definition exactly as the drafters wrote it. They wrote it to say a claim is a right to payment. Right. It may or may not be. I'm sorry. Yeah, but then they went on to say that the claim may be contingent, which means it's not a right. A claim may be unliquidated. I mean, as I said, it just sweeps very broadly. And you've cited no case on any facts analogous to this in which a claimant has been rejected in a UFTA case for lack of standing. While fraudulent conveyance law and the statutes might give wide berths to what creditor status is, they also, you know, the statute requires particularity, including the elements of fraudulent conveyance. That's a different issue. Both the statute requires that and Rule 9b requires that. And I understand that you've raised and preserved that issue. Right. But I'm focused immediately on the standing determination, on the lack of standing determination, because I'm puzzled why the question of statutory standing, that's what we're dealing with, not constitutional standing, but statutory standing, shouldn't be governed by the plain and ordinary meaning of the statutory text. And here again, and, you know, I wasn't trying to divert the question. I'm sort of, the question of particularity and that the law requires particularity is relevant to the definition of what creditor status means. Because otherwise, you're in the scenario where you have nothing more than one allegation of fraudulent conveyance that's built on another allegation of fraud. And particularity is the gatekeeper to weed out legitimate cleaving and establish who actually has creditor status. And so the claim is a right to payment. That doesn't mean anybody who asserts a hypothetical claim or a theory of recovery, as the plaintiff has here, it's a right to payment. And unlike in these other cases, it doesn't, it says whether or not the right is reduced to judgment. It doesn't say that it has to be reduced to judgment or that it doesn't have to be reduced to judgment. It may or may not be because it's a very fact-specific analysis. The statute is so broad because it could apply in a number of different statutes and based on a variety of different facts. And the question is, based on these facts here, in the context of where we have a final judgment that no one disputes that judgment was satisfied, logically, how can someone have a right to payment under an established, satisfied prior judgment that's never been disrupted? And there's been two cases now to try to reopen that divorce case and, you know, as a mechanism to modify that judgment. But to date, there's never been a right to payment that would entitle... But counsel, with all due respect, if you're going to try to impose that gloss, what you are doing is you're rendering nugatory the statutory language because insistence on an established right to payment would eliminate all contingent claims, many unliquidated claims, and you can go down the list in the statutory definition of creditor. And if you apply the criterion that a preexisting right of payment is a condition precedent to any of those people being creditors, which the statute doesn't say, but if you apply that criterion, that statutory definition would be changed from a very broad definition to a relatively narrow definition. And in the absence of a single case that says that that's the way the USDA ought to work, I'm reluctant to plunge into those waters. I mean, is there a case that says that right to payment trumps the statutory definition of creditor? The right to payment is within the definition of claim, and a creditor, by definition, must have a claim. So it's embodied in the definition. All right. I think we're talking around in circles. Let me now move you over to the question of choice of law. You heard the series of questions I asked your brother about all the facts that we don't know from this record that could be around choice of law. Can you edify me as to any of them? Do we know anything from this record about what communications, negotiations, meetings, or the like took place between Robert Foisy or his representatives and WPI that led to, facilitated, and implemented these transfers? No, Your Honor. I think you're correct. The record is what we have, and there are facts we don't know. Okay. And by the same token, we don't know anything about where the parties were located when those negotiations took place, where they were located when the assets were transferred. We don't even know from this record, insofar as I can tell, where Robert Foisy was physically at the times, plural, of the various transfers. And all of those facts, certainly, it seems to me, would have a... And finally, to get to a point Judge Barron brought up with your brother, we can't even tell what form these transfers took. We know what the plaintiff claims in terms of the total amount of value. We know that one of those elements in that total is the Vaduz Trust, which everyone seems to assume is composed of securities, although I'm not sure that's clear from the record. But there is no specific information about the remainder of the transfers as to whether those transfers were in cash, in securities, in gold, in real property, or in Bitcoin. We simply don't know. And out of all those facts that you as a prudent lawyer would like to have at your fingertips in advising your client on what a likely choice of law determination would be in this case? If I were advising my client, I'd have to advise him or her on the record that we have. But you see, we're not stuck with that record. Because we have a choice. We are at a stage of the litigation where in fairness to everybody, including the district judge and ourselves, where we have the option of saying, send this back to the district court. Fill these gaps in the record. Do your discovery. And then if you find that it makes a difference, that there is a material conflict, and it is probable that there may be, let's put it this way, there at least may be, but if there is a material conflict, make your choice of law determination in an informed manner, not by guessing at what's in the record. The judge says, for example, something to the effect of, well, I don't think Robert was in Connecticut at the time he made these transfers. There's nothing in the record that bears on that anyway. That's the judge who's an experienced judge. That's his intuition from the totality of the circumstances. But it would be nice to have some evidence on it so we didn't have to guess. And the fact that we do have the plaintiff has not said anything that would reasonably tie WPI to Connecticut, and you're right. What we do have is the assets or money were transferred to a Massachusetts entity. This is a fraudulent conveyance case brought against that innocent third party in Massachusetts, and it leaked for the past four years. You say innocent third party, and I'm not disputing that that may prove to be the case. But without discovery, do we even know that? I mean, see, we have no way of knowing from this record what transpired between Robert and WPI. And one would like to think that WPI is an innocent third party, but you can't point to anything in the record that says that it is. And it would be nice to know what discussions were had. It would be nice to know, for example, whether Robert informed WPI as to what he was doing. And those are all things where when I turn the page to look for the answer to that, all I get right now is a blank. And, you know, I'm puzzled because it seems to me, in fairness to your client and to Mrs. Foisey and the district court, everyone wants to get this right. So I'm struggling with the notion of why shouldn't we get where this is so cloudy a situation, right? Why shouldn't we get all the relevant facts on the table before we make the determination? What's the rush? This thing has been going on in one form or another for ten years. Well, with all due respect, it's been going on in one form or another. I mean, there's undoubtedly a very long history of acrimony between the plaintiff and her ex-husband. There's nothing in the record that alleges that this wasn't innocent, that WPI was. No, no, but even WPI has been involved with the Foisey money. I mean, the so-called pledge was made in this case when, in 2009? That's correct. Yeah, and that's the pledge which supposedly these transfers were meant to fund, at least in part. That's what I mean when I say this has all been going on for ten years. And it is a complicated, complex situation. Ford cases often are. And I'm looking for some reason that you can give me. It's a question I ask your brother. Some reason you can give me as to why we shouldn't get all the facts rather than just decide this month or next month that the district court was either right to pick Massachusetts law or that the district court was wrong and should have picked Connecticut law. And the only response, and it may not be satisfactory, is that this is not a one-size-fits-all. This is the record we have, and frankly, it doesn't feel very fair to drag WPI through a full adjudication of a case to then say, oh, oops, there was no evidence of that. But there hasn't been a full adjudication of the case. This was all decided at the motion-to-dismiss stage. There hasn't even been discovery in this case. So to say it's a full adjudication of the case is somewhat of an overstatement. Counsel, I'd ask that you, having made your points earlier, if you want to say something in response, you hold it until you're closing. I'm through with my questions, Judge White. Thank you. Judge Barron? Can I take you back? I want to come back to the choice of law issue but to the threshold question of whether the plaintiff here is a creditor. If I understand your argument, I think what you're saying to us is that this is an unusual case because on the pleadings itself, the claim is self-defeating because there is an existing judgment in Connecticut which simply does not entitle her to the money and is capped in a way that precludes her from getting the money she now seeks. And so until that judgment is opened, she can't possibly be a creditor. Is that right? That's correct, Your Honor. I mean, this is a very fact-specific analysis, and here there is one of these few cases where we already have a final judgment. So there's no dispute. So the idea that this is – I mean, is there a likeness problem? In other words, until that judgment is opened, she would then only have a contingent claim because it wouldn't be clear that she would be entitled to this money just because the judgment was opened. But is your point that until she gets that judgment removed, she just can't possibly have a final conveyance claim? Under these particular facts, there needs to be some showing that she has a right to payment.  But I guess I want to put it more – maybe putting it more strongly. I take you to be arguing as she's pleaded, it's clear she is precluded from getting payment. Unless she establishes a right to payment that would entitle her to a modification of that final payment. No, I know that. I understand that. I want to stop using the words right to payment for a second. And I want to understand if what you're arguing to us is that if I just look at the face of the complaint, the complaint, because it says there is an unopened final judgment in the Connecticut courts which has been satisfied, the pleading itself shows she is barred from getting the payment she seeks. Is that a fair reading of the complaint? I think that is a fair reading. And I will – there is reference in the complaint to a prejudgment remedy that was never – there's never been any application for – or for instance, there's never been any application or granting of, for instance, an attachment. That would be potentially without a right to payment. So that is done at the very initial stages as a matter of procedure under Connecticut law. But there's been nothing. But does that create – I know Judge Scalia raised this point that at least as framed by the parties, you've been presenting it as a statutory standing case. But is there a potential Article III standing issue? In other words, how is she injured by the conveyance so long as that judgment is in place? And how would any remedy we give be anything she's seeking? How would what she's seeking be redressable here so long as that thing is in place? Do we have an Article III issue we have to confront or not? The district court analyzed this as a statutory standing issue. And the court below, whether you analyze it as a statutory standing, we argued it as a subject matter jurisdiction. At a minimum, it's a 12B6 standard. She hasn't – I know. So we have an Article III obligation to address our Article III standing. So I guess I'm now understanding your argument as you put it. Does the existence of that judgment being in place, and you describe it as a satisfied judgment, does that create an Article III standing issue for us? The – you know, again, you know, we don't see that – yes. I think my best answer is yes, in that, you know, she hasn't alleged that she's suffered some sort of actual or, you know, threatened injury now and that she has standing. Okay. Turning to the choice of law issue, is there any need, putting aside whether the factual record is murky or clear, putting aside whether the merits of it show that it's Connecticut law or Massachusetts law or some other law, what is the need for us to decide at this stage of the litigation that there is – that the law of either of those states applies? As long as we were of the view that the welfare decision was distinguishable and that the complaint did not describe the common law claims with sufficient clarity to make it clear that they were different than the claims that could be brought under the statute. Is there any need for us, if all of that was true, is there any need for us to decide the choice of law issue at this stage? You know, our position is that, you know, as the district court pointed out, there is a technical difference of whether the common law fraudulent conveyance claims were preempted but that it doesn't make a difference as to the actual results because whether you – courts in Connecticut and Massachusetts, they apply the law the same way with respect to the definition of creditor in this context. So if that's true, if the common law claims are not giving rise to a conflict and if we conclude that the Massachusetts statute and the Connecticut statute would apply the same as to these facts, if we assumed all of that were true, is there any need for us to decide the choice of law issue? No, Your Honor. Okay, just to push on that. In your briefing, you make reference to the statutory cap on damages. But I take it from your answer now, although that's a potential conflict down the road, there's no particular need for that to drive our choice of law decision now because who knows if we'll ever get to that question, is that right? That's correct, Your Honor, not at this juncture. You know, I agree with my brother with regard to, you know, addressing where there could potentially be conflict down the line but not at this juncture. Okay, thank you. Okay, we're now at the closing arguments. One minute for each side. Counsel, proceed. Thank you, Your Honor. The question of whether my client is a creditor is readily answered under the plain language of the UFTA. Counsel for WPI looks to the Walford case and looks to the fact that the parties are married and that is a red herring under this record. Consider if Janet Foysi and Bob Foysi were not married and they had entered into a commercial contract and Bob Foysi had failed to disclose a material fact in the negotiation of that. Janet Foysi would have a cause of action under that scenario. That's exactly what happened here, and the fact that they were married shouldn't muddy the water. So there's no question that she was a creditor. With regard to the question raised by Judge Barron just a moment ago, it is important to resolve the conflict question because Counts 2 and 4, which are the common law under Connecticut law, were dismissed on the basis that they're preempted presently by Massachusetts law. Thank you, Attorney Junius. And counsel, this closing is it after we hear this one minute, then the court will adjourn.  Thank you, Your Honor. Again, do I go back to this is essentially an enforcement proceeding and as the plaintiff cites here in her brief, it merely provides a mechanism for the application of the assets of the debtor to satisfy the claims whose origin is elsewhere. If this case were allowed to go forward, we have no idea what the size of the judgment would be. That means it can't be redressed. That means by definition the plaintiff doesn't have standing. She could have a case here in the District of Massachusetts based on an allegation of fraud that hasn't yet been established. And under these conditions, she just doesn't meet the definition, the statutory definition of standing under these circumstances or she hasn't satisfied the element of what she would need to bring to bring a fraudulent conveyance claim. Thank you very much. I'd ask the clerk to end the proceedings and then the judges will do some both five minutes thereafter. Thank you, Judge. This session of the Honorable United States Court of Appeals is now recessed until the next session of the court, God Save the United States of America and this Honorable Court. Counsel, you may disconnect from the meeting.